Your Honors, may it please the Court, I'm Angie Buwalda for the Appellant. The overriding question regarding this case is whether a Court of the Commonwealth of Virginia would see fit to recognize the marriage of the Appellant, Michael Adjei, and his wife, Barbara Bletching, who have now been married 21 years. Or would they instead find that Michael's wife is a criminal, a bigamist, and his four children are illegitimate? This all stems from Mr. Adjei's application for naturalization, which was denied by U.S. Citizenship and Immigration Services and by the District Court because his wife, Barbara Bletching, and her ex-husband, Kingsley Geisa, were not domiciled in Ghana at the time of their divorce, and which was ceremonially dissolved by the responsible elders of the two families on January 6, 2000. This denial by USCIS and the District Court occurred despite the fact that Barbara and Kingsley were originally married in Ghana under customary tribal law. The fact that they lived together in marriage in Ghana for several years, the fact that they both continued to have their citizenship in Ghana at the time of the divorce, and the fact that the dissolution of the marriage followed the same strict protocols of the Ghanaian traditional law. Through no fault of his own, are there any Virginia Appellate Courts recognizing a divorce issued in a jurisdiction where neither spouse was domiciled? So the Virginia Appellate Court case of... First, I'm happy to hear about the case. Is there such a case? No, Your Honor, not a Virginia Appellate case. There are potentially two Virginia cases that did recognize it, and I would argue that in the Virginia Fairfax County case of Elkari v. Atum, that it had a few analogous facts, including that the couple there was married in their native Jordan and lived there together for a brief period of time, and the fact that neither were domiciled there at the time a divorce decree was obtained. Then the facts deviate from there. In Elkari, the U.S. citizen husband sought the divorce from Jordan in order to shorten the qualifying period of separation required in Virginia to obtain a divorce. Again, he was the U.S. citizen. He utilized a power of attorney in Jordan to file for divorce there, and he did not give proper service to his ex-wife, but posted the notice on the parents' home in Jordan. This amounted to a unilateral divorce. It is significant to note that in addressing domicile, the judge in Elkari v. Atum of Fairfax County analyzed additional public policy considerations. Domicile is addressed as a subsection of Virginia public policy. The court identified whether there were some reasonable residency and domiciliary requirements as one of the multiple issues. Reasonable means that this is not a simple yes-no equation and that domicile is not a mandatory prerequisite to granting comity. The judge looked to domicile arguments with the same weight as the notice requirements and the waiting period requirement. In contrast— But as you say, there may be a trial court. I don't know. It may or may not be, but they are all older cases. The Evans case and the Howe case both seem to indicate that recognizing a divorce decree as a matter of comity depended on whether they both wouldn't do it when neither spouse was domiciled in the divorcing jurisdiction. As far as I can tell, neither Evans or Howe has been overruled. And as a federal court, don't we owe a particular deference, well, not only to state law as a general matter, but when you're talking about marriage and divorce and family law issues, and we're talking about comity, don't we need as a matter of comity to pay particular attention to the strict dictates of Virginia law? Your Honor, all of the cases that you've referenced and that opposing counsel referenced in their briefings all involve male actors. It all involved a dispute between one of the parties to the divorce. And the distinction, and I believe it's a key distinction, is that the case at hand, as well as other cases, demonstrate that in here we don't have an issue of one of the parties to the divorce disputing it. Kingsley and Barbara had agreed to the method of divorce, and therefore they never disputed or challenged the method of divorce. And that's a key distinction from the other cases that you reference and that opposing counsel reference. Well, can I come to this? I take your point on that. And we look at this in a somewhat different way. Aren't you asking us to do something that is not generally recognized? In the United States, I think there's only one jurisdiction would do this. Isn't that correct? Your Honor, in New York, that is the jurisdiction you're referencing. Well, is there another jurisdiction? Let's leave aside both Virginia, that I know you're arguing about, and New York, which I acknowledge. Is there any other jurisdiction in the United States that would do this? Your Honor, the issue on comity is one that we've been reviewing here, and the issue is not found in the same way in other jurisdictions. So the answer to my question is no. Is that correct? There is no other jurisdiction besides New York, and what you're proposing that we do here with Virginia law. We were unable to find another jurisdiction with a similar fact pattern. The point that we're making… Well, you find another jurisdiction with a dissimilar fact pattern, but which comes to the same conclusion. Some other facts are different. Your Honor, there aren't other cases in other jurisdictions, no. Your Honor, looking at the issue of comity, the U.S. Supreme Court, in its decision, Hilton v. Guyot, had defined comity as, quote, the recognition which one nation allows within its territory to the legislative, executive, or judicial action of another, having due regard both to international duty and convenience, and to the rights of its own citizens or other persons who are under the protection of its laws, unquote. The plain meaning of the words in this definition and the standard of recognition must take into account multiple considerations of public policy and public well-being. For example, the four Adjaye children are under the protection of the Commonwealth of Virginia, and their rights must also be factored in and considered. In Hilton, the court stated, quote, a judgment affecting the status of persons, such as a decree confirming or dissolving a marriage, is recognized valid in every country unless contrary to the policy of its own law. The court went on to say that, quote… Counsel, you just mentioned another country, and I want to ask you a variation of Judge Maltin's question. I know there are cases about U.S. citizens who moved from one state to another. I want to bracket all of those cases. I want to ask you this. Are you aware of any case in which the highest court of a state refused to recognize the divorce of two citizens of that country in situations where the marriage had also been performed in that country? Your Honor, I am not aware of such a case with those specific facts, no. And isn't that important? I mean, I guess because, you know, domicile matters a lot for U.S. citizens, because if you say that I'm a citizen of Virginia, that just means I'm domiciled in Virginia, because there's no separate test for state citizenship other than domicile. But all kinds of people are citizens of countries in which they're not domiciled, right? They are, but in the context of divorce, when you're looking at… Sorry, this is a friendly question. Yes. When you're looking at the divorce rules or traditions of another country, comity requires that the state which is analyzing give consideration to that country's safeguards within its statutory or traditional, in this case, traditional… Right. I mean, it's one thing for me to say that a Virginia court would not recognize a divorce. If two Virginians run off to get divorced in, say, Nevada, I could imagine why Virginia might say, we're not going to recognize in a Nevada divorce of two people who don't live in Nevada. I can see that argument. It's quite another thing to say, to predict that a Virginia court would not recognize a Ghanaian court's divorce of two Ghanaian citizens. That seems like a whole different thing. Well, correct. And these were both citizens of Ghana, and they exited their marriage in the same way they entered in, under traditional Ghanaian law. And it's our viewpoint that a lot of the cases that do look at Nevada or other situations where one of the parties had gone there to get the divorce, they were doing that to flout the law. So in this case, and also the case of Anand V. Lynch, there was no flouting of Virginia law of any kind. In fact, the safeguards are stronger under Ghanaian traditional law than even here. In Ghana, you cannot get a dissolution in the traditional custom without the family. You don't get married in Ghana without the family. It is the elders of the tribe or the family that actually participate in the ceremony. It's the same with the dissolution. It's the elders that participate in the ceremony. Even had Kingsley and Barbara obtain their divorce in Fairfax County, nevertheless, they could have received it. They weren't flouting the law in any way of Fairfax or of Virginia. What they did was go to Ghana and relieve the duties of their tribal traditions through the elders who were there. Now, Your Honor. So building on Mike's question and taking your point, is there anything particular about having the two people not be within the jurisdiction of the group, the state or the country that is supposedly granting the divorce? Is there any particular careful look a subsequent court is entitled to give to that kind of divorce? It seems to me that you could make the argument that that is more. I understand it wasn't susceptible to abuse here. There was no abuse, but it is susceptible, more susceptible to abuse, right? So in the context in Ghana, you have to have the elders of the church. I'm sorry. I do understand that. And I think that's a good argument. You've made it already. Yeah, I'm asking you to take this because then what we establish is a rule here, not just for Ghana divorces, but for other countries, right? Well, it may be that the domicile point is a point of public policy, but it's not the only point. And our position is that there are other public policy considerations. I would turn the court's attention to the Virginia Supreme Court of OVVO, which granted comity there to a family court situation where they looked at the standard of care given in England to a custody of the children in that case. And the Supreme Court of Virginia found in OVVO that the standard included societal values, personal rights, and public policy, which is reasonably comparable. And that reasonably comparable language is also language which was found in the case of REV Atum. They're looking at the reasonableness. And this is one of the one of the questions that I wanted to ask you. What what is the limiting principle to your position? I mean, where do we go from here? You know, you're attempting to build an equitable case, I recognize, but if we throw out the idea of one spouse needs to be domiciled, what do we put in its place? And what authorization does Virginia law give us? Because I think the argument you make before is this is an appealing, equitable case, and I'm not disputing that, but I don't know, as a matter of law, what we have to recognize as far as when Virginia must recognize a divorce decree. As a matter of comedy, I mean, I just don't know where we go once we depart from whatever drawbacks seems to be something of a bright line rule, workable rule. A couple of points there. We don't believe that it is an exclusive requirement that one party be of a divorce be domiciled in the jurisdiction of the divorce. When you're answering that question, can you talk into your answer response to how versus how, which seems to be a statement by the Supreme Court of Appeals of Virginia. Yes, Your Honor, which said each state has exclusive control of the matrimonial status of those domiciled in its borders. Yes, Your Honor. Two points on that. First of all, I would like to point out the Supreme Court case of Hilton v. Guyot had an additional important principle. And that is, quote, it is against the law of nations not to give credit to judgments and sentences of foreign countries till they be reversed by the law. And according to the form of those countries were in they were given for what right have one kingdom to reverse the judgment of another. That's Hilton v. Guyot 1885 U.S. Supreme Court. So they're looking at international comedy there. And I would say with regard to the issue here in Virginia, you have the principles set forth in, for example, Humphreys v. Humphreys as well as Clark v. Clark. Again, you're looking at broader public policy issues, including duty, mutual interest in reciprocity, courtesy, convening. That's the problem. You're substituting a multi-factor test and that we have some sort of equitable exceptions to the domiciliary requirement. And I don't know what we do. Are we going to you say they got divorced in accordance with tribal customs? I mean, are we, of course, supposed to go fishing around each country's tribal culture? I mean, we are substituting what respectfully seems to me to be an indeterminate and somewhat marshy standard for what appears to be clear Virginia law in an area of domestic relations, where it seems to me that state law occupies a paramount place. And I'm always nervous in establishing equitable exceptions to this and that and the rest, not only because they're very hard to apply and they're vague, but they lead to inequities. Some people get the advantage of the equitable instincts of the court and others don't. And I just feel like we're sort of sailing into never, never land. But at this point, maybe the best thing to do is to ask Judge Motz or Judge Heitens if they have questions of you and if they do, then that's fine. And if they don't, you'll have some time for rebuttal. And I'll ask my colleagues if they want to ask you a question. Thank you, Your Honor. We thank you. Ms. Yang, a pleasure to hear from you. Thank you, Your Honor. Good morning, and may it please the court, Katherine Yang from the Department of Justice. I think it might be helpful to start at the beginning with the discussion of what comedy is and what comedy is not. Comedy is not about whether the foreign jurisdiction would consider the divorce valid under its own laws. Comedy is about whether to recognize the divorce obtained under foreign laws, applying, in our case, Virginia's laws, and for the purpose of which we are appearing before the court today, with the additional nuance of doing it for purposes of immigration law, naturalization law. As this court held in the Jawhead case from 2006, the framing of the issue is whether, for purposes of United States law, the foreign jurisdiction had power to enter the divorce, not whether the foreign jurisdiction under its own laws had power to enter the divorce. And here, Virginia law is clear. For the last 100 years, the Virginia Supreme Court has held that domicile is the controlling question when determining whether or not to recognize a foreign divorce as a matter of comedy. Ms. Yang, I've heard it's very clear they've said that in the context of U.S. citizens, where domicile is the sole test of citizenship. Do you know of a single Virginia appellate decision that says domicile is the controlling inquiry when the person is the citizen of a foreign country? I will acknowledge that I believe all of the appellate decisions from Virginia arose in the context of intrastate recognition, meaning intrastate within the United States. And isn't that a super big difference for at least two reasons? One, if it's state to state, it's a full faith and credit issue, not a comedy issue. That's difference one. And difference two, again, as I said with your colleague, there is literally no – I mean, I grew up in Wisconsin. I feel very attached to Wisconsin. But I am not in any sense a citizen of Wisconsin because I am domiciled in Virginia. And under U.S. law, I can only be domiciled in one state. And the notion of being a citizen of a state, a U.S. state, without being domiciled there is literally gibberish, legally speaking. There is no test for what it means to be a citizen of Virginia other than to be domiciled in Virginia. That is not true for national citizenship, right? The stats I see are there are 9 million U.S. citizens living abroad. And I think the United States would take the position those people are still citizens. They have to pay taxes in the U.S. They do all kinds of things in the U.S. So why isn't that just a gigantic difference? We're not talking about two people who were citizens of Alaska and got married in Alaska and got divorced in Alaska. We're talking about citizens of Ghana who got divorced in Ghana. And the question is whether Virginia would recognize their Ghanaian divorce. Right. So I think there are a few pieces to the response to your question. The first is just to quickly address the full faith and credit versus comedy issue. Certainly, full faith and credit is at issue when it is state versus state law. But nonetheless, comedy is also still discussed in those same cases. So it's not that the state law cases exclusively discuss full faith and credit. That is the floor. Comedy goes above that. It is discretionary beyond that. And many cases from the Virginia Supreme Court that we cited all have discussed the question of recognizing divorces, foreign divorces, as a matter of comedy. So that's the. Foreign is in the sense of other states, other U.S. states, not other countries. Correct. That's correct. The second piece of my response is I would point the court to the Virginia Circuit Court decision and I'll carry. Now, of course, I recognize that's not an appellate decision, but it is, I think, quite instructive. And it is also very recent. And so I think for that reason. But I've read that decision and it does not grapple at all with the difference between U.S. states and other countries. It just assumes that distinction is irrelevant. Right. It may have been that both were right. I can't remember that particular. But certainly at least one of the spouses was a citizen of Jordan at the time of marriage. The couple was originally married in Jordan. They lived in Jordan. They later came to the United States. Oh, no. Sure. I think that case is very good for you. And with all due respect to that decision, I am very inclined to think that decision is just. Certainly, I appreciate your honor's position there. But nonetheless, because there are there are circuit court decisions that do the opposite. Right. We agree there's at least one Virginia Circuit Court decision that would recognize it. So respectfully, your honor, I'm not sure I would agree. And the reason for that is is a few fold. So I believe the circuit court decision that you're referencing is the Bloom case from 1977. That was a circuit court decision. The first piece that I would say is that we actually don't have that case before us. We don't actually know what it said or what the facts were or what the reasoning was. So that's problem number one. Problem number two is that the only the only way this case came up was in a description and a description and a law review article. When I looked back at that article, the article itself didn't actually say that there was domicile by the by the spouses in that case. That was an assumption, I believe, that petitioners counsel made in their briefs, but it wasn't actually stated in the law review article. So that's another problem, again, because it does go against a century of Supreme Court Virginia law. Can I try to narrow what I think is the dispute in this case? C.I.S. originally C.I.S. Is that right? Right. Yes. Originally gave like three reasons for refusing to recognize this marriage in its initial decision. But then it dropped two of the three. Right. So any questions about fraud or mistake? All of those things are gone. Literally, the only question before us now is assuming that this marriage and divorce were conducted in strict compliance with Ghanaian law, would Virginia recognize it? Right. That's the only question left. There's no question about whether tribal law, divorce, marriage is sufficiently analogous. That's all gone. Right. The only question is this domicile. Is that right? Correct. Is whether for purposes of determining strict compliance with naturalization law. Sure. And so I guess for purposes of that, we can assume away everything about traditional tribal marriage in Ghana, traditional tribal divorce in Ghana. We could assume this divorce was done by the courtiest court that ever was that is identical to Virginia in every conceivable respect. Right. None of none of the differences between traditional Ghanaian marriage and divorce and how one might get married in the Circuit Court of Fairfax. Is it all relevant? Right. I'm not sure I would agree with that, Your Honor. And again, this brings me back to my domicile points. I hope I'm I hope I can address them together. But what the Virginia courts do is they look at overall consistency between the foreign jurisdictions laws and the laws of the Commonwealth. And and when there is reasonable consistency, such as in the old case that petitioner cites, then it doesn't it doesn't offend Virginia public policy to recognize that foreign first divorce. Certainly, the Supreme Court, the Virginia Supreme Court in the home. But the only part of overall consistency that CIS is actually relying on at this point is the domicile point. Right. That's correct. There's no other relevant part of consistency. That's correct, because because having domicile on the one hand and locking domicile on the other are not slight differences. They are polar opposites. OK, let me give you, I guess, a hypo that that troubles me. So I want you to imagine the following hypo to Virginia citizens, two people grow up in the U.S. citizens. They grow up in Virginia, they're domiciled in Virginia, they get married in Virginia, and then they move to the United Kingdom because one of them gets a job. And they're there, you know, they're there in the United Kingdom to get a job while there, they get divorced. While in the UK, the entire time they remain domiciled in Virginia, though, because they don't establish any permanent intent to remain in the United Kingdom, is your view that Virginia wouldn't recognize that. Of course. It has to be right, because that in the domicile point is the same as this case. So if I'm understanding the hypo correctly, a couple maintain their domicile in Virginia throughout the entire time because they failed to take affirmative steps necessary to establish affirmative domicile in the United Kingdom because they're only there temporarily. And they went to a U.K. court to get a divorce and presumably the U.K. divorce granted the divorce. So I think I mean, I think the hypothetical is missing a couple facts, which I think might affect the analysis. I think one key fact that's missing is whether the whether the U.K. court had a domicile requirement in order to find jurisdiction for their. Let's posit it didn't because they granted them a divorce. Yeah. So, I mean, so I think in that case, it actually I think it would be the case that Virginia would not recognize the U.K. divorce because in that instance, the procedural laws of the country in which the couple obtained the divorce are fundamentally at odds with the procedural law and the substantive law of Virginia. And I believe it was the the Virginia Supreme Court in McFarland that said no state is bound by comedy to give effect in its courts to the divorce laws of another state repugnant to its own laws and public policy. Similarly, the Court of Appeals in Clark said it would be violative of public policy to displace our own procedural. OK, so let me continue with that hypo and ask you if this troubles you. So now say everything is the same except they establish a U.K. domicile as in they've moved to the U.K. They're now living in the U.K. So again, the hypo is two people who meet in Virginia, grow up in Virginia, get married in Virginia. And when they get married in Virginia, they're absolutely domiciled in Virginia. They move to the U.K. They establish U.K. domicile. Some number of years later, things don't work out. And they think, you know, we got married in Virginia. We should probably get divorced in Virginia. So they go back to Virginia and get the divorce there, except they're not domiciled in Virginia at that point. And so when they go back to London, the U.K. refuses to recognize their divorce. Do you think the United States would be terribly happy with that outcome if the United Kingdom refused to recognize a divorce of two U.S. on the grounds that they live in London at the time the marriage was dissolved? I don't think I'm in a position to say whether or not the U.S. government would be happy or unhappy in that scenario. Forget you, Virginia court. I know you created this marriage. I know you got rid of this marriage. I know that when you did this marriage, it was perfectly lawful. But we, the courts of the United Kingdom, don't feel like recognizing that because they're in London now and they're ours, not yours. I mean, I think I do think that under the laws of the I mean, of course, another another piece would be the laws of the laws of the jurisdiction, which the subsequent marriage would govern. So perhaps. No, but we have to assume that all the way to. Right. Because for purposes of this case, as I understand, the only legal question is whether this divorce was about was valid. If the divorce was valid, then the subsequent marriage was valid. And if it wasn't valid, then it wasn't. So if the divorce is valid for purposes of immigration law, which you have just incorporates the law, Virginia. Right. Not whether the divorce was valid under the laws of Michigan. Yes. The burden is on the petitioner here in under federal immigration law. To establish the validity of marriage and divorce. Now, is there any impediment at all or any bar at all to federal law building upon Virginia law for federal immigration purposes? Is there any is there any is this plainly a matter of state law? And is it perfect? Is there any bar to having federal law rest upon a state law predicate? No, no, Your Honor, because because we're in this unique context of the immigration and naturalization context for purposes of determining whether the petitioner is eligible for naturalization, we have to look at whether he's in strict compliance with the natural. Do we have do we have any other option? Do we have any option other than to rely upon Virginia domestic relations law as it pertains to marriage or divorce? We, we can argue about what Virginia law says, but on the underlying question, there's the only option that we have is to interpret Virginia law. In terms of the validity of of marriage and divorce and the federal law can be predicated on Virginia law. And so in your argument is that the Virginia law. There may be some old cases, but Virginia Supreme Court has has spoken and it's been clear and the legislature and the Virginia courts have not overturned that to any discernible degree. And I guess what I'm saying is consulting state law is really the only option that we have. We can't create a federal common law of marriage and divorce for immigration purposes. We can't go the route of a federal common law test. We have to consult state law in an area of traditional state primacy. That's correct. That's, that's at least how I would understand you say we have to channel that inquiry. That's right. And I, and I do want to make clear that there is no dispute in this case whatsoever by either party that it is Virginia law that governs the question. And when the highest court of resort in Virginia has repeatedly spoken on the issue of what is required to recognize a foreign divorce as a matter of comedy, what is required to recognize a foreign divorce foreign in the sense of another state. Have they ever said that in the context of foreign countries. The Virginia Supreme Court has not, but I think the import of that legal. And so there's me. So what if any Virginia Supreme Court decision would be inconsistent to say we fully understand that when it comes to state to state comedy domicile is the test for whether you can get a divorce. But we declined to predict that the Virginia Supreme Court would decline to recognize a divorce entered under the laws of a foreign country. When the underlying marriage was contracted under the laws of that country. And when the time of both the marriage and the divorce, both parties to the marriage were citizens of that. So, the, again, I can't point to an appellate court decision from Virginia that has dealt with a foreign country, but certainly when it comes to dealing with foreign divorces in the sense of interest state divorce. Judge months asked your colleague a question that can you think of the decisions of another of the high court of any state that have said they wouldn't recognize a divorce in that situation. I believe that we cited to the American law reports relevant section in our red brief. And in that summary, the authors stated that New York was the only jurisdiction within the United States to recognize a foreign divorce, whether it was a divorce made foreign because of other states or because of other countries. New York was the only jurisdiction within the United States to recognize that divorce in the absence of domicile based on some other connection with the forum. Every other jurisdiction in the United States has done the opposite. And of course, as most relevant here all I acknowledge your honors concern with the lack of Supreme Court cases, Virginia Supreme Court cases dealing with foreign countries. The wealth of precedent that has developed in this state is that domicile is the controlling question, and I'll carry again is a circuit court decision but it is applying the last hundred years of precedent from the Virginia Supreme Court to hold that divorce obtained in a foreign country, even when there were ample connections between that country and the spouses to the divorce. That that wasn't that wasn't that wasn't the relevant focal point domicile was the right. So Judge items makes my friend makes a point I think is a is a good equitable case as to what should happen in this situation all that. And my concern is One of the troubling aspects of this is I don't want to get into a land of indeterminacy and one of the arguments that was was made was that they were divorced in absentia through relatives, according to tribal custom That this was a tribal custom in Ghana on that you could have an in absentia divorce through relative within that lets us loose into saying, you know, going on to some sort of excursion or fishing expedition about what Each country's tribal culture is And That Seems to me to be pretty open ended. And so I think judge will consider your point on equity is a good pivot point to where I'll conclude, which is Well, counsel, can I just ask you under your argument, they could have gone to Ghana, and it wouldn't have mattered. They could have gone, they could have gone to a courthouse that is indistinguishable from the circuit court of none of the none of your argument in this case depends on this an absentia tribal law stuff right because under your argument, even if the two of them had gone back to Ghana. Even if the two of them had gone to a courthouse that is indistinguishable from a Virginia circuit courthouse. None of that would matter because they weren't domiciled and gone at the time. Right. So I'm not sure that's entirely correct, your honor. And let me explain it this way. So domicile is the controlling question in Virginia law and it's a necessary element. Yes, that is correct. Once it's not established, nothing else matters. But if it were established, there could be any number of other factors that a Virginia court could consider as a matter of equity in determining, nevertheless, to record to to not recognize the divorce. Which is to say that domicile is necessary, but it may not necessarily be sufficient in the end for Virginia to ultimately recognize. No, I understand that. I'm just pointing out that's not the ground CIS rely on. No, that's correct. Domicile is the foundational element that is missing here. It could be that there are other ways in which Ghanaian divorce procedures either are in concert are contrary to Virginia public policy, whether procedurally or substantively. That's not an issue here because the floor that is missing is domicile. Can I ask you a question? You didn't talk about this matter of Adwo in your case. And this is the BIA's decision, which they cite a couple of times that a declaration could establish that a previous marriage that had been dissolved under Ghanaian customary law. Both of them were married in Virginia. Do you have anything to tell me about that case? Yes, your honor. So I believe matter of Adwo was determining what's required to prove a Ghanaian divorce. And, and the issue here is not again, going back to where I started. The issue here is not the validity of the Ghanaian divorce under Ghanaian laws. It may very well be that the Ghanaian divorce is valid under Ghanaian laws and within the boundaries. Even though the people were married in Virginia. Right, right. Correct. Yes, because it is for purposes of determining divorce. We are looking at where we are looking at the validity of that divorce for purposes of recognizing the divorce. And so, and so the issue here is not the validity of the foreign divorce under the foreign jurisdictions laws, but rather, whether as a matter of comedy for purposes of United States law for purposes of Virginia law, we would recognize the divorce here. And unless there are any other questions, I think the court for its time and ask that the district court decision be affirmed. All right. Thank you. And most of all, you have some rebuttal time. Thank you, your honors. Um, I would point out that the US Supreme Court in Hilton be get did review comedy in the context of nations. And I think that that's in part what's happening here. And also, I would point out that. Thank you for referencing the matter of Codwell because there's a string of VA cases, which reference Ghana. Judge Wilkinson referenced the fact that are we asking the court in Virginia to overturn centuries of precedent and we're not what we're asking the court to do is recognize that there are additional principles that the principle of domicile is one but not the exclusive principle. Domicile is is important, but it's not controlling. If domicile were the controlling question, then an awkward versus a tomb, the Fairfax court would have ended its discussion when it talked about domicile instead it went into reasonableness. Mr edges case is not seeking an exception. Mr edges case is not seeking an exception to the rule regarding domicile of divorcing parties, nor we asking for a new test. We're asking you to seek to distinguish your instance your case from cases, which just involve citizens of the United States in the United States. Yes, Your Honor, and I think what is your basis for doing it. Your Honor. We're looking at it as a nation's we're as a Supreme Court in the in the Hilton be referenced. It's not for one kingdom to overturn the laws of another. We're recognizing that Ghana does have significant traditional law and they also have within their system safeguards. Your rule would be that if a foreign nation recognizes a divorce. It's citizen. Then that then that's all she wrote, then every other nation has to recognize it. Is that right? There are additional factors that should be considered. So I'm not arguing that. For people were domiciled in the foreign nation, right, or whether there's fraud perpetrated, I would distinguish. Jihad V. Acri from the standpoint in Jihad V. Acri there was efforts to perpetrate by the parents in that situation who were fabricating their divorce in order to qualify their son for citizenship. I don't understand. I don't understand where you're taking us. I don't understand where you're taking us. All you've said is reasonableness. And that just seems to me to leave everything at sea. I don't understand where you're going with this. What's the new framework. You've got an older rule. Virginia might change the rule. Maybe it's wise for Virginia to change the rule, but I don't understand why a federal court should be embarking on a reasonableness standard. For recognition of marriage or divorce. It seems to me that's Virginia's choice to do and we should sort of be the last ones to be expanding state law in an indeterminate direction. I don't understand where we're going with all of this. Thank you, Your Honor. So the Virginia Supreme Court in America Online versus Namtai Electronics. In that case, once again, they looked at comity and they're looking at other factors, including terms of moral standards, societal values, personal rights and public policy. Again, these are all reasonably comparable to that here in Virginia. So I think what we're looking at is not so much a test distinguishing, but a test affirming that here in Virginia, domicile is one but not exclusive of the factors under consideration. I believe the district judge in Annan v. Lynch was accurate when he ruled in favor of the Ghanaian couple in that case, because in that case, we saw that there were factors considered and we're looking at those factors in today's case. In Mr. Ege's marriage to his wife of 21 years and looking at the consequences, including to the children. You can't look at this in a vacuum and only look at one strict construction rule of domicile. There have to be other considerations because there are others impacted by this, namely the children, as well as his wife. Pardon me. We're also looking at the significant consequences of a ruling to find that domicile controls exclusively in that Mrs. Ege, Barbara Ege, will be a criminal and a bigamist. Here in Virginia, that is a strict liability. Here in Virginia, the consequences are significant. They have filed tax returns, they have done everything as joint, and it isn't what she thought she was divorced and now there'll be a court determination that she wasn't divorced properly and that she's a bigamist. These are extreme concerns for the family. They're not saying necessarily that she's a bigamist. All they're doing is simply as a matter of federal immigration law, is relying on state law and what seems to be a pretty clear rule. Now, you know, there's a lot of discussion about the advantages of multifactor tests versus the advantages of a bright line rule. And a bright line rule has tough consequences in some cases, but it also has advantages in providing clear notice and in stemming inequalities, because if you leave everything up to a reasonableness test, then you're going to have all kinds of inequalities, I think, in terms of marriages that are recognized and marriages that aren't. I don't want to be repeating myself, but I don't understand where all this is going at all. And you talk about the factors in your case and about other people in your case. But we can't construct a rule out of the particular circumstances of one case. If Virginia wants to do that, Virginia wants to do a multifactor test, they can, but I don't think Virginia has opted for the things that you are asking us to adopt, which is multifactor reasonableness test. Do you acknowledge that we are to try to predict what a Virginia court would do? Yes, Your Honor, you're to predict what a Virginia court would do. What to predict what the Virginia Supreme Court would do, not what some court in Virginia might do. Right, right. The Virginia Supreme Court, and I would reference that there are Virginia Supreme Court cases in the family law context, Oil v. Oil being one, and also the Virginia Court of Appeals and Clark v. Clark, which looked at factors beyond simply, strictly domicile. I understand that, but we're all in agreement that we look to what Virginia law is. And one of the things I believe that the district court in Annan v. Lynch had found and why they relied on matter of ma is that there is a distinctive three or four point test given there under matter of ma, and our case squarely fits within that. Thank you, Your Honors. I know I'm out of time. We thank you very much.
judges: J. Harvie Wilkinson III, Toby J. Heytens, Diana Gribbon Motz